32909. COMMERCIAL BANK v. READD et al.

JORDAN, Justice.

This appeal is from the grant of an interlocutory injunction.

Carl and Cheryl Readd bought real property from J. L. Bowen in October, 1975. Bowen had given a deed to secure debt on this property to the Commercial Bank in September, 1971. This deed contained an "open-end" clause securing "any other present or future indebtedness

or liability" of Bowen to the bank. The warranty deed from Bowen to the Readds recited that it was given subject to the security deed from Bowen to the bank, which loan deed the Readds assumed and agreed to pay. In November, 1975, the bank made a loan of $3,050.28 to Bowen, secured by household furniture, and in February, 1976, the bank made an unsecured loan to Bowen of $792.96. During the month of October, 1976, the bank and the Readds received notice from the United States District Court for the Northern District of Georgia that Bowen had filed a petition in bankruptcy. There were prior liens of record on the household furniture listed as security in Bowen's note of November, 1975, which defeated foreclosure against this collateral by the bank.

In the equitable action by the Readds against the bank it was asserted that the bank was estopped from foreclosing the deed to secure debt from Bowen to the bank, conveying property later conveyed by warranty deed to the Readds, to collect the unpaid balances on Bowen's notes to the bank of November, 1975, and February, 1976. It was prayed that the bank be enjoined from foreclosing the security deed, and that the court enter an order striking the "open-end" clause of the deed. After hearing evidence, the trial judge found that there were issues of fact as to whether the conduct and actions of the bank constituted an estoppel to prevent it from enforcing the "open-end" provision of the deed, and the bank was temporarily enjoined from proceeding to foreclose the deed.

The following evidence was relied on by the Readds to show that the bank should be estopped from proceeding with the foreclosure. In October, 1975, prior to the assumption of the indebtedness by the Readds, an attorney checking the title for the real estate company which sold the property called the bank and ascertained from some person there the amount of the balance then due on the indebtedness of Bowen to the bank. The Readds had no knowledge of any subsequent loans made by the bank to Bowen. They have made all payments due on the indebtedness based on the outstanding balance due on Bowen's note and security deed on October 20, 1975, and the bank has accepted these payments. After notice of the

bankruptcy by Bowen there were discussions by the Readds with the bank concerning the indebtedness under the deed to secure debt and the subsequent loans to Bowen by the bank. No notice was given to the Readds of any foreclosure under the deed to secure debt.

There is no ambiguity in the warranty deed wherein the Readds assumed the indebtedness secured by the deed to secure debt from Bowen to the bank, and there is no ambiguity in the "open-end" clause of the deed to secure debt.

In *Courson v. Atkinson & Griffin, Inc.*, 230 Ga. 643 (198 SE2d 675) (1973), this court held: "The interest of a grantee in a deed to secure debt which contains an 'open-end' provision conveying realty is protected as against the grantee in a later executed warranty deed where additional indebtedness is contracted for by the grantor in the deed to secure debt after the execution of the warranty deed." See also *C. & S. DeKalb Bank v. Hicks*, 232 Ga. 244 (206 SE2d 22) (1974); *Tomkus v. Parker*, 236 Ga. 478 (224 SE2d 353) (1976).

While the Readds testified that they did not understand that their assumption of Bowen's deed to secure debt made the property security for subsequent debts of Bowen to the bank, they were charged with such knowledge by the recitals in their warranty deed. Their lack of knowledge of the subsequent loans would have no legal effect on their assumed obligation.

Even if an inference could be drawn from the evidence that the bank had knowledge that Bowen had sold to the Readds the property conveyed as security to the bank, this would not estop the bank from foreclosing its security deed in order to recover subsequent indebtedness of Bowen to the bank. *Rose City Foods v. Bank of Thomas County*, 207 Ga. 477, 481 (62 SE2d 145) (1950). The furnishing of information by an employee of the bank as to the amount of indebtedness due by Bowen at the time the security deed was assumed by the Readds would not estop the bank as to subsequent loans to Bowen. The cases cited by the Readds do not deal with "open-end" clauses in a security deed.

The Readds were entitled to no other notice of the foreclosure sale except that specified in the security deed

which they assumed. *Ruff v. Lee,* 230 Ga. 426 (197 SE2d 376) (1973); *Southern Mut. Inv. Corp. v. Thornton,* 131 Ga. App. 765, 766 (2) (206 SE2d 846) (1974).

There was no evidence at the interlocutory hearing to make an issue of fact on the question of estoppel against the bank, and it was error to grant the interlocutory injunction.

*Judgment reversed. All the Justices concur, except Hill, J., who concurs specially, and Hall, J., who dissents.*

ARGUED NOVEMBER 15, 1977 — DECIDED JANUARY 18, 1978.

*James & Johnson, Robert J. James,* for appellant.

*O'Berry, Collier & San Filippo, L. Lyn O'Berry, Ronald C. San Filippo,* for appellees.

HILL, Justice, concurring specially.

In this case we follow Georgia case law which makes the home buyer (or buyer of other real property) responsible for some debts of the former owner which are incurred by the former owner *after* the sale of the property. *Vidalia Production Credit Assn. v. Durrence,* 94 Ga. App. 368 (94 SE2d 609) (1956); *Reisman v. Jacobs,* 107 Ga. App. 200 (129 SE2d 338) (1962). See also *Coursin v. Atkinson & Griffin, Inc.,* 230 Ga. 643 (198 SE2d 675) (1973).[1] This problem is critical in this state because we have no means for closing "open end" or "dragnet" clauses in security deeds upon the transfer of the real estate or the grant of a "second mortgage."

The weight of authority in this country would bar

---

[1] This rule is also applicable to personal property transactions. *Rose City Foods, Inc. v. Bank of Thomas County,* 207 Ga. 477 (62 SE2d 145) (1950); *Cantwell v. Fulton Nat. Bank,* 113 Ga. App. 358 (148 SE2d 95) (1966). See also Code Ann. § 109A-9—204 (5). *Rose City Foods, Inc. v. Bank of Thomas County,* supra, as well as *Vidalia Production Credit Assn. v. Durrence,* supra, have been limited in some respects by Code Ann. § 67-1316, discussed below.

priority to the grantee of an "open end" security deed if such grantee chooses to make further advances to the original grantor after receiving notice of the second mortgage or of the grantor's transfer of the property to another. Annot. 138 ALR 566 (1942); American Law of Property, § 16.74 (1952); Thompson on Real Property, § 4747 at nn. 80, 82 (1958); 55 AmJur2d 915, Mortgages, § 1090; Note, 21 Okla. L. R. 79 (1968). Some jurisdictions allow the constructive notice of recording to subordinate subsequent advances, others require actual notice to the senior lienholder while Vermont requires that the senior lienholder be expressly notified that no further advances are to be made on the first security. Patch & Co. v. First Nat. Bank, 90 Vt. 4 (96 A 423) (1916). Without such notice provisions, Georgia law provides no clear means of protecting buyers who assume the "open end" obligations of the present owner in purchasing a home. Refinancing of "open end" security obligations and inability to make second mortgages with other lenders is the practical consequence of this inflexible Georgia rule.

Code Ann. § 67-1316 allows only obligations in contract (as distinguished from ex delicto) and between the original parties to fall within the "open end" clause. This modest restriction does not afford home buyers a means of protecting themselves from unnecessary foreclosure. A means of obtaining such protection is sorely needed.