## 65585. TEDESCO v. CDC FEDERAL CREDIT UNION.

DEEN, Presiding Judge.

Appellant Ferdinand Tedesco entered into a credit agreement with appellee CDC Federal Credit Union (CDC) whereby appellant was enabled to borrow monies up to a limit of $30,000, and simultaneously executed a Deed to Secure Debt encumbering his residence. The agreement required appellant to pay annually, on the anniversary date of the agreement, a lump sum comprising all monies then owing, and to maintain a zero balance for a minimum of 14 consecutive calendar days each year. The agreement authorized the appellee "with or without cause" to refuse any future advances that might be requested and to terminate or cancel appellant's account. The deed to secure debt contained an open-end or "dragnet" clause regarding future advances, see OCGA § 44-14-1 (Code Ann. § 67-1316), and expressly incorporated the credit agreement, with the further express provision that total repayment of the original debt would not operate to extinguish the deed to secure debt as provided in OCGA §§ 44-14-60, 44-14-67 (Code Ann. §§ 67-1301, 67-1306).

After paying in full his initial loan, appellant maintained a zero balance for some time and subsequently borrowed other sums, a small portion of which remained owing at the time the action below was filed. Appellant sought, however, to have CDC cancel the deed to secure debt, claiming that the lien imposed thereby was voidable as a result of his having fully paid the original debt, and that appellee should cancel the deed of record, thereby removing the lien and clearing his title.

Appellee petitioned the court for a declaratory judgment declaring the deed to secure debt to be in full force and effect and not voidable. The court below granted the prayer for a declaratory judgment, adopting as its findings of fact the facts admitted in the pleadings and concluding as a matter of law that appellee CDC had given consideration for the agreement and deed to secure debt; that the deed to secure debt was not, under the terms of the agreement, automatically cancelled by satisfaction of the original debt; and that the deed remained in full force and effect. On appeal Tedesco enumerates as error the trial court's rulings that CDC had given consideration and that in signing the documents appellant had waived his statutory rights regarding cancellation of the security deed upon full payment of the original indebtedness. *Held:*

1. The trial court did not err in holding that appellee had given consideration for the deed to secure debt. It is well settled that open-end or "dragnet" clauses regarding future advances are valid

and enforceable in this state. OCGA §§ 44-14-1, 44-14-60 (Code Ann. §§ 67-1316, 67-1301); *Hill v. Perkins,* 218 Ga. 354 (127 SE2d 909) (1962). When an agreement for future advances accompanies a deed to secure debt, it is not only the money (or credit equivalent) actually advanced at the time of, or closely subsequent to, execution of the credit agreement and deed to secure debt that constitutes consideration on the creditor's part; it is the agreement itself, and the creditor's commitment embodied therein to lend further sums to that same borrower without the necessity of subjecting the latter to the often cumbersome and time-consuming procedures that ordinarily accompany the obtention of credit.

To assure a profitable — or at least solvent — operation, a lender must have security not only for sums that have actually been lent out to a particular borrower at a particular time, but also for those additional sums that the creditor has agreed to lend to that same borrower upon proper application. If the statutory right of satisfaction and cancellation set out in OCGA §§ 44-14-60 and 44-14-67 (Code Ann. §§ 67-1301, 67-1306) were construed as operating automatically in such manner as to force cancellation immediately upon discharge of the initial indebtedness regardless of the existence of a future advances agreement, the lender would be faced with two undesirable alternatives: the awkward one of cancelling the original deed to secure debt and thereafter, upon the borrower's applying for an additional loan or loans, having him execute a new deed expressly covering the new sums to be advanced; or the fiscally unsound alternative of fulfilling the obligation to lend money with no security at all. The impracticality of these alternatives is patent.

In insisting that the deed to secure debt be cancelled immediately upon payment of the initial debt, without offering to relinquish reciprocally the right to apply for the loan of additional monies without submitting to additional credit procedures, appellant provides a classic example of the proverbial desire to "have one's cake and eat it, too": he wishes to retain the benefit of readily available credit without assuming the concomitant burden of a continuing encumbrance of his real property. Appellant's argument that appellee's right to refuse a particular request for a loan and to terminate the credit agreement vitiates consideration is specious, as is his contention that no consideration exists during the mandatory 14 days when there is a zero balance. If he desires the encumbrance to be removed from his residence, nothing in, or associated with, the credit agreement or deed to secure debt prevents his paying off his entire current indebtedness, notifying the lender that he wishes to terminate the credit agreement, and thereafter requesting the lender

to cancel the security deed, either by quitclaim deed or by a written order on the face of the deed to secure debt, as provided in Ga. Code Ann., Ch. 85-2; see also OCGA Chs. 44-2, 44-14 (Code Ann. Ch. 29-4, §§ 38-637—38-640, Title 60, Title 67). If the lender refuses to do so, appellant has a remedy at law. *Willis v. Rabun County Bank,* 161 Ga. App. 151 (291 SE2d 52) (1982). In other words, the appellant has the right *not* to borrow at a given time and *not* to keep the credit agreement in force indefinitely, just as the lender has the right to decline to make a particular loan and to cancel the credit agreement. This assignment of error is therefore without merit.

2. The trial court did not err in finding that, in expressly agreeing to the provision in paragraph 26 that the deed to secure debt would remain in full force and effect notwithstanding the satisfaction of the original debt and the existence of a zero balance, appellant waived the right of cancellation set forth in OCGA §§ 44-14-60 and 44-14-67 (Code Ann. §§ 67-1301, 67-1306). Georgia law is clear that deeds to secure debt containing open-end clauses "continue to be effective so long as there exists indebtedness between the grantor and the grantee." *C & S DeKalb Bank v. Hicks,* 232 Ga. 244, 246 (206 SE2d 22) (1974), and that new advances may be tacked on while the secured indebtedness exists. *Courson v. Atkinson & Griffin,* 230 Ga. 643 (198 SE2d 675) (1973). It is also clear that the dragnet provision is a recognized exception to the general rule expressed in the statutes regarding instantaneous extinction of the deed and reconveyance to the grantor. *C & S DeKalb Bank v. Hicks,* supra; *Courson v. Atkinson & Griffin,* supra; 59 CJS Mortgages, § 453; 55 AmJur2d Mortgages, §§ 394-395. Compare *Sapp v. ABC Credit & Invest. Co.,* 243 Ga. 151 (253 SE2d 82) (1979); *Hennessy v. Woodruff,* 210 Ga. 742 (4) (82 SE2d 859) (1954).

What is at least potentially unclear, however, is the definition of "indebtedness between the grantor and the grantee," *C & S De-Kalb Bank v. Hicks,* supra, in the context of a dragnet clause. Does "indebtedness" refer only to the initial loan or other initial contractual debt, as appellant contends, or does it refer to *any* indebtedness contemplated by the credit agreement and accompanying deed to secure debt? In view of our analysis in the first division of this opinion, we hold that the term is more comprehensive than appellant concedes, and includes not only the original indebtedness but also any *ex contractu* debts subsequently incurred while the credit agreement remains in force. Under the facts of the instant case, then, appellant would clearly have no right to demand cancellation of the deed to secure debt because he has received subsequent advances on which there is still some money owing.

Moreover, on the basis of our analysis, supra, we hold that even if

appellant had had a zero balance at the time when he demanded cancellation, he would still not have been entitled to cancellation of the deed to secure debt unless he simultaneously arranged for termination of the credit agreement. Only upon termination of the credit agreement establishing the line of credit under which individual instances of indebtedness are subsumed does there cease to exist consideration flowing from creditor to borrower, and only then does the borrower have the right to resume the consideration he has proffered in entering into the contract. By electing to gain the benefit of an established line of credit, appellant also elected to reject or waive the benefit of instantaneous extinction of the lien. In short, having made his bargain, he cannot in equity expect to have the *quo* and yet retain the *quid.* It is well settled that a contractual waiver of rights is permissible provided the contract does not require the doing of that which is impossible, illegal, immoral, or prejudicial to the public welfare. OCGA § 1-3-7 (Code Ann. § 102-106).

We share the concern expressed by Justice (now Chief Justice) Hill in his special concurrence in *Commercial Bank v. Readd,* 240 Ga. 519, 522 (242 SE2d 25) (1978). Until the legislature acts to remedy the potential harm to would-be-purchasers of encumbered property posed by currently enacted relevant legislation, however, the courts can only undertake to apply existing law in the light of equitable principles and with due regard to perceived legislative intent. In the instant case these considerations converge to compel the conclusion that the court below did not err in granting appellee's petition for a declaratory judgment that the deed to secure debt is not voidable and remains in full force and effect.

*Judgment affirmed. Banke, J., concurs. Carley, J., concurs in the judgment only.*

DECIDED JULY 7, 1983.

*Kirk W. Keene,* for appellant.
*Walter H. Hotz, William D. Strickland,* for appellee.